OPINION
{¶ 1} This is an appeal by defendant-appellant, James E. Tyler, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of kidnapping and aggravated burglary.
 {¶ 2} On July 17, 2003, appellant was indicted on two counts of kidnapping, in violation of R.C. 2905.01, one count of aggravated burglary, in violation of R.C. 2911.11, two counts of aggravated robbery, in violation of R.C. 2911.01, four counts of robbery, in violation of R.C. 2911.02, and one count of theft, in violation of R.C. 2913.02. Each of the counts carried a firearm specification. The indictment arose out of an incident on July 10, 2003, at a trailer court on Harmon Avenue, Columbus, Ohio. Troy Mitchell Edwards was named in the indictment as a co-defendant on all of the same counts.
 {¶ 3} The matter came for trial before a jury beginning May 16, 2005. The state's witnesses included the alleged victims, Heather Shortridge, and Matthew Piotrowski, as well as Edwards, who is currently incarcerated for aggravated robbery, burglary, and kidnapping, arising out of the incident in the instant case. Edwards agreed to testify on behalf of the state in appellant's trial in return for a guilty plea that would result in three five-year sentences, to be served concurrently.
 {¶ 4} In July 2003, Edwards resided at an apartment located on Morse Road, Columbus, Ohio. Edwards first met appellant on July 9, 2003, when they spoke with each other at a neighborhood bar. The next day, Edwards was again at the bar and appellant asked him if he would go to town with him and "run a few errands." (Tr. Vol. I, 31.) They picked up a friend of Edwards', David Bell, and the three men went to a McDonalds restaurant where appellant bought food for Edwards and Bell. Appellant then called his brother, Andrew Ghee, to pick up Edwards and Bell.
 {¶ 5} Ghee arrived to give Edwards and Bell a ride, but said he had to make a stop before they headed north. Ghee told Edwards that he had "sold this guy this Cadillac and he was supposed to be a drug dealer." (Tr. Vol. I, 33.) Ghee drove to a trailer court on Harmon Avenue and pointed out the Cadillac. After driving around the trailer court, Ghee drove to a mini-mart store on Harmon Avenue.
 {¶ 6} At the store, Ghee handed a gun to appellant, along with some zip ties; appellant, in turn, gave the zip ties to Edwards. According to Edwards, Ghee wanted to "catch the guy that he sold the car to," and to "[d]o a robbery." (Tr. Vol. I, 34.)
 {¶ 7} Edwards, Bell and appellant walked back to the trailer park and approached a trailer where Matt Piotrowski and his girlfriend, Heather Shortridge, resided (1049 Harmon Avenue). The men knocked on the door, and Shortridge came to the door and told them her boyfriend was not at home. The men inquired about buying the Cadillac, and Shortridge told them she would call Piotrowski, who was nearby running an errand. Piotrowski arrived a few minutes later to the trailer.
 {¶ 8} Piotrowski, who acknowledged at trial that he had previously purchased the car from Ghee and paid him with marijuana, spoke with the men about the car. Piotrowski told them to take their time thinking about it.
 {¶ 9} Appellant then looked at Edwards and stated, "what do you think?" (Tr. Vol. I, 35.) Edwards responded, "well, I guess it's time to go to work." (Tr. Vol. I, 35.) At that point, appellant pulled out the gun, put it at Piotrowski's side, and took him inside the trailer. Appellant told Piotrowski and Shortridge to get on the floor. While appellant held a gun on them, Edwards used the zip ties to tie their hands.
 {¶ 10} Appellant asked Piotrowski where he kept the drugs and money. Piotrowski indicated there were $20 bills in the bedroom. The men began to rummage through the residence, taking money from a coffee table drawer and on a nightstand; they also took two jars of change and emptied it into a bag. After returning from the bedroom with some bills and change, appellant, who then had a knife, threatened to "start slicing throats to make it worth it." (Tr. Vol. II, 17.) Piotrowski pleaded with appellant to leave Shortridge alone, stating she was pregnant. Appellant then told Piotrowski they wanted his car, and that he could pick it up at a gas station on Harmon Avenue in five minutes. Appellant warned them he would return and kill Shortridge and her baby if he observed any police.
 {¶ 11} Appellant and Edwards then exited the residence, got into Piotrowski's SUV, and drove away. After the men left, Piotrowski managed to free both himself and Shortridge. He then went outside and noticed that the three men in his vehicle had gone the wrong way through the trailer park; the men had turned around and were driving down the street past him as he stood outside. A neighbor drove by and Piotrowski explained what happened; they took off in pursuit of the assailants, while Shortridge remained in the trailer and called 911 to report the incident.
 {¶ 12} The men soon noticed Piotrowski following them in a truck, and they returned to the store on Harmon Avenue. Bell attempted to jump out of the vehicle and get in Ghee's waiting vehicle, but Ghee stated to Bell, "don't get in my van * * * because they coming." (Tr. Vol. I, 38.)
 {¶ 13} Edwards and appellant, now hearing sirens, drove away in Piotrowski's SUV, but they turned into a lot with a dead end road. They exited the vehicle and took off on foot, arriving back at the store; the men began changing clothes behind the store, but police officers soon arrived and detained them. Shortly thereafter, Piotrowski identified appellant and Edwards as the individuals involved in the robbery.
 {¶ 14} Police officers found clothing behind the store on Harmon Avenue, including a black pullover jacket; blue sweatpants; a red, white, and blue sweat jacket; and some envelopes. The envelopes contained identifying information concerning appellant.
 {¶ 15} A police detective subsequently showed Shortridge a photo array, and she picked out appellant's picture. The detective also interviewed appellant at police headquarters. During the interview, appellant told the detective that he walked to the trailer park with Edwards to inquire about a Cadillac for sale, and spoke with an individual named Matt. According to appellant, after speaking with Matt, he took off running because an individual, who he claimed to have been involved in a fight with on a prior occasion, pulled up in a truck. Appellant stated that he jumped a fence and cut his clothing, so he took off the sweatpants he was wearing.
 {¶ 16} The detective later learned that Ghee was the half-brother of appellant. Eventually, Edwards identified David Bell as the third individual who went to the trailer on the date of the incident (and apparently remained outside the trailer during the incident).
 {¶ 17} Following deliberations, the jury found appellant guilty of two counts of kidnapping, one count of aggravated burglary, and two counts of aggravated robbery.
 {¶ 18} On appeal, appellant sets forth the following two assignments of error for review:
 [I.] THE PROSECUTING ATTORNEY'S REMARKS DURING CLOSING ARGUMENTS CONSTITUTED PROSECUTOR-IAL MISCONDUCT IN PLAIN ERROR WHICH DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 [II] THE FAILURES OF APPELLANT'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE, THEREBY DEPRIVING THE APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 19} Under the first assignment of error, appellant argues he was deprived of a fair trial because of prosecutorial misconduct during closing argument. Appellant cites several instances of alleged misconduct, including his contention that the prosecutor suggested to the jury that guilt was a foregone conclusion, and that the jury should limit its review of the evidence in reaching a verdict.
 {¶ 20} In State v. Binder (Feb. 11, 2000), Ottawa App. No. OT-99-031, the court discussed the role of an appellate court in considering a claim of prosecutorial misconduct, stating in relevant part:
 Prosecutorial misconduct occurs when the prosecutor makes a statement that is improper and the improper statement causes prejudice to appellant. State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883; State v. Ross (Nov. 13, 1998), Erie App. No. E-97-053, unreported, discretionary appeal not allowed (1999), 85 Ohio St.3d 1440; State v. Rice (May 1, 1998), Lucas App. No. L-97-1154, unreported. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970, discretionary appeal not allowed (1995), 73 Ohio St.3d 1425, 652 N.E.2d 798; State v. Rice, supra. Additionally, the appellate court should consider whether the alleged misconduct was "an isolated incident in an otherwise properly tried case." Braxton, 102 Ohio App.3d at 41, 656 N.E.2d 970. A reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct. State v. Smith, 14 Ohio St.3d at 15, 470 N.E.2d 883; State v. Vallejo (Oct. 18, 1999), Lucas App. No. L-98-1090, unreported. * * *
 {¶ 21} Appellant first cites the following statements by the prosecutor, during closing argument, regarding the instruction the jury would receive from the trial court on the firearm specifications:
 * * * The Judge will instruct you on that. But they're on each and every count. You'll have to answer that question on each and every count. Did he or did he not have the firearm. I know that may be confusing to you because you're thinking well we're already going to find him guilty of ag burglary we've already said he had a deadly weapon or it couldn't be aggravated burglary. Same way with the robbery. Well, we've already found he had a firearm why do we have to answer this additional question. That would be for sentencing purposes and that is not for your concern, but it is for your concern to answer that question for purposes of the Court at a later date.
(Tr. Vol. III, 60.)
 {¶ 22} Appellant maintains that the prosecutor's comments improperly suggested to the jury they should have already found him guilty of aggravated burglary, and that the only remaining question is whether or not he used a firearm. Appellant argues that the statements could have left the jury with the foregone conclusion they were to presume him guilty of the substantive crime. We disagree.
 {¶ 23} The portion of the transcript cited by appellant fails to include the prosecutor's comment, just prior to the challenged materials, in which the prosecutor stated: "If you find them guilty of the aggravated burglary there will be a question for you to answer, did the Defendant have a deadly weapon and did he brandish it, use it in the offense." (Tr. Vol. III, 60.) Read in context, the challenged comments, made after the prosecutor's statement to the jury that if they found appellant guilty there would be an additional question to decide, do not imply to the jury it should have already found appellant guilty of aggravated burglary.
 {¶ 24} Appellant also asserts that the prosecutor committed misconduct in remarking that the only question the jurors had to decide was whether the alleged victims had told the truth and were credible. Appellant maintains that there were other witnesses that testified on behalf of the state, and that the jury was required to consider all of the testimony in reaching its verdict.
 {¶ 25} We note there was no objection to this comment, and, therefore, appellant has waived all but plain error review. State v. Scheck, Medina App. No. 05CA0033-M, 2006-Ohio-647, at ¶ 19. In order to show plain error, "an appellant must establish that but for the error the outcome of his trial would have been different." State v. Perrin, Lucas App. No. L-05-1139, 2006-Ohio-3801, at ¶ 15.
 {¶ 26} Upon review, we do not believe the remark was an attempt by the prosecutor to limit the jury's consideration of the evidence; again, reading the challenged statement in context with the rest of the state's argument, the prosecutor's remarks were simply a comment on the fact that the alleged victims (Shortridge and Piotrowski) identified appellant, and that their credibility was at issue. Further, appellant does not contend that the testimony of the state's other witnesses, including the significant testimony of Edwards, differed from that of Piotrowski or Shortridge, nor does the comment amount to improper vouching for the credibility of the state's witnesses. We therefore find nothing improper with the comment.
 {¶ 27} Appellant next challenges the prosecutor's statements that "there are some difficult cases," and that there are "cases where all you have is * * * what we call he said she said cases." (Tr. Vol. III, 62.) Appellant contends the statements amounted to improper comments regarding other cases.
 {¶ 28} We note no objection was made to these remarks. Upon review, we disagree with appellant's characterization of the remarks as an improper comparison by the prosecutor of the strength or difficulty of this case with other cases. The prosecutor did not use information from other cases, nor does the record suggest that these statements contributed to the verdict. See State v. Powers, Franklin App. No. 05AP-780,2006-Ohio-4458, at ¶ 32 (no prejudice to appellant from prosecutor's closing remark that: "[s]ometimes we don't have overwhelming evidence. Sometimes we do"). Further, the trial court instructed the jury that closing argument is not evidence, and it is presumed that the jury followed the court's instruction. State v. Walker, Stark App. No. 2005-CA-00286, 2006-Ohio-6240, at ¶ 73. Accordingly, even assuming these remarks to be improper, we find no plain error.
 {¶ 29} Finally, appellant challenges the prosecutor's reference to "[v]ictim blaming" during closing argument. (Tr. Vol. III, 71.) Again, there was no objection to this remark, and appellant has not shown that the result of the trial would have been different had this isolated comment not been made. Thus, appellant has not demonstrated plain error.
 {¶ 30} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 31} Under the second assignment of error, appellant contends that his trial counsel was ineffective, thereby depriving him of a fair trial. More specifically, appellant argues that his counsel's performance was deficient in failing to request disclosure of witness statements, waiving his right to an opening statement, and in failing to object to remarks by the prosecutor during closing argument. Appellant also argues that his counsel's performance in failing to object to improper questioning of witnesses by the prosecution resulted in prejudice.
 {¶ 32} In State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, the Ohio Supreme Court noted the applicable standard in reviewing a claim of ineffective assistance of counsel:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 33} Appellant first contends, without elaboration, that counsel was ineffective in failing to request the disclosure of witness statements after the state's witnesses testified on direct examination.
 {¶ 34} The state argues, and we agree, that the record fails to support appellant's claim. Specifically, at the close of the direct examination of Shortridge, the prosecutor represented that Crim. R. 16(B)(1)(g) "has been complied with long ago and again today." (Tr. Vol. II, 42.) Following the direct examination of Piotrowski, defense counsel acknowledged, "the record should reflect that I was provided with 16(B)(1)(g) material in advance." (Tr. Vol. II, 106.) Further, as noted by the state, appellant does not contend that the state failed to provide, upon pre-trial request, any statements of Edwards, as a co-defendant. See Crim. R. 16(B)(1)(a)(i). Based upon the record on appeal, appellant has shown neither deficient performance nor prejudice.
 {¶ 35} Appellant's contention that his counsel was deficient in waiving the right to make an opening statement is not persuasive. This court has previously noted that "[t]he decision whether or not to make an opening statement is deemed a tactical decision that does not ordinarily rise to the level of ineffective assistance."Powers, supra, at ¶ 39, citing State v. Addision, Franklin App. No. 03AP-1102, 2004-Ohio-5154, at ¶ 13. In the instant case, appellant has not demonstrated that his counsel was deficient in making that decision.
 {¶ 36} Appellant also argues that trial counsel was deficient in failing to object to remarks by the prosecutor during closing argument. In addressing appellant's first assignment of error, we found the subject remarks to be either proper, or that appellant suffered no prejudice by any of the comments. In light of our disposition of the first assignment of error, counsel's failure to object to such comments did not constitute ineffective assistance of counsel. Powers, supra, at ¶ 40.
 {¶ 37} Appellant's contention that he was prejudiced by his counsel's failure to object to certain leading questions is similarly without merit. Ohio courts have recognized that "`[d]ebatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel.'" State v. McCoy, Richland App. No. 2005-CA-0025,2006-Ohio-1320, at ¶ 62, quoting State v. Phillips (1995),74 Ohio St.3d 72, 85. Moreover, "courts have recognized that due to a trial court's broad discretion to allow leading questions, the decision to not object to leading questions is a trial strategy." McCoy, supra, at ¶ 62. See, also, State v. Jackson (2001), 92 Ohio St.3d 436, 449 (trial counsel not ineffective for failing to object to excessive leading questions by state; it is within the trial court's discretion to allow leading questions on direct and, therefore, the failure to object to leading questions does not constitute ineffective assistance of counsel).
 {¶ 38} In reviewing the instances cited by appellant, counsel's decision to forego raising objections could be viewed as trial strategy, and we decline to second-guess those choices. Additionally, we do not find a reasonable probability that the outcome of the case would have been different had counsel objected.
 {¶ 39} Finally, we find no prejudicial error regarding appellant's claim that his trial counsel was ineffective in failing to object to the state's request to address the issue of venue during the redirect examination of Detective Brenda Walker. A trial court is permitted to "exercise its sound discretion to allow new testimony on redirect."In re Bailey (July 14, 1981), Lawrence App. No. 1472 (finding no prejudicial error by trial court in allowing appellee to question witness as to venue on redirect examination of witness even though venue was not discussed on direct or cross-examination; purpose of general rule disallowing new testimony on redirect is to prevent unfair surprise from reservation of important testimony until redirect; appellant was not unfairly surprised by the fact high school was located in particular county).
 {¶ 40} Similarly, in the instant case, appellant was not unfairly surprised by the state's request as to the issue of venue. Further, the failure to object to admissible evidence does not establish ineffective assistance, and appellant has not demonstrated that an objection would have been successful.
 {¶ 41} Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 42} Based upon the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and SADLER, JJ., concur.