OPINION
{¶ 1} Defendant-appellee Wayne Balzer appeals from a summary judgment rendered in favor of plaintiff-appellee Dan Cyphers. Balzer contends that the trial court erred in determining that Cyphers's claims were not barred by the statute of limitations. Balzer also contends that the trial court erred in determining that Cyphers was entitled *Page 2 
to contribution and in finding that an accounting was not a prerequisite to the entry of judgment.
 {¶ 2} We conclude that the action was untimely filed under R.C.1303.16(G)(3), which imposes a three-year statute of limitations on actions like the present claim for contribution. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 3} At some time prior to December, 1998, Dan Cyphers, Dan's son, Darin, and Wayne Balzer all became co — owners of a business called Equity One Financial Ltd. Co. (Equity). In order to raise funds for the business, Dan Cyphers borrowed $63,000 from a home equity line of credit with Fifth Third Bank. All three men signed a promissory note in November, 1998, which stated that:
 {¶ 4} "Wayne B. Balzer, Darin G. Cyphers, and Dan C. Cyphers, referred to herein as `MAKERS', agree to pay to the Order of Fifth Third Bank, referred to herein as `HOLDER', the sum of the remaining balance of the above mentioned Line of Credit account (currently approximately $63,000) * * * with interest thereon at the prevailing interest rate on that account.
 {¶ 5} "* * *
 {¶ 6} "Should MAKERS fail to pay any installment when due, then HOLDER shall have the option to accelerate the payment of the full principal sum and accrued interest payable."
 {¶ 7} The note further provided that it was to be paid in full by Equity by January *Page 3 
1, 2004, and if it were not paid, the members of Equity would pay the remaining loan balance from their personal funds in proportion to their ownership interests, which were described as follows: "Wayne Balzer — 50%; Darin Cyphers — 49%; and Dan Cyphers-1%."
 {¶ 8} Both the Cypherses and Balzer signed the note as "guarantors," below a section of the note that read as follows:
 {¶ 9} "PERSONAL GUARANTEE
 {¶ 10} "The undersigned, in consideration of the extension of credit by HOLDER to MAKERS, unconditionally personally guarantee the full and prompt payment of principal, interest and any collection costs, including attorneys fees to HOLDER."
 {¶ 11} In April, 2000, Balzer resigned his position in Equity and surrendered his interest in the company. Equity defaulted on the note, and after Fifth Third demanded payment, Dan Cyphers paid $69,335.51 to repay the full balance of the note.[1] Dan Cyphers then filed the present action in October, 2005, requesting that Balzer pay his share of the note. Cyphers further alleged that Balzer had collected money due Equity, but had accounted for only a portion of the funds. Accordingly, Cyphers also asked for an accounting.
 {¶ 12} Balzer filed an answer in January, 2006, admitting that he had signed the promissory note. Balzer raised various affirmative defenses, including laches, waiver and estoppel, and unclean hands. Balzer did not raise the statute of limitations, *Page 4 
although he did mention it in a later motion for summary judgment.[2]
 {¶ 13} In June, 2006, Cyphers filed a partial motion for summary judgment, asking for judgment on the contribution claim, in the amount of $34,667.75 plus interest from April 1, 2000. The trial court granted partial summary judgment in Cyphers's favor in October, 2006. The court relied on law pertaining to the common law right of contribution, and found no issues of fact with regard to whether Cyphers had discharged Balzer's liability on the note. The court also rejected the statute of limitations defense, finding that the action was not governed by R.C.1303.16(G)(3), which provides for a three-year statute of limitations. Instead, the court concluded that the claim arose in equity and must be prosecuted within a reasonable time. The court found that the time was reasonable under the circumstances of the case, and awarded judgment in favor of Cyphers for $34,667.75 plus interest at the statutory rate from the time Cyphers repaid the loan to Fifth Third.
 {¶ 14} The trial court later filed an order of dismissal, conditionally dismissing the case until such time as a final dismissal entry with prejudice was filed. The court noted in the dismissal entry that the case had reportedly been settled. However, Cyphers subsequently filed a motion asking the court to vacate the dismissal and enter judgment in accordance with the summary judgment decision. Cyphers then dismissed his remaining claim for an accounting, without prejudice, under Civ. R. 41(A)(2) in March, 2007. *Page 5 
 {¶ 15} In April, 2007, the trial court filed a decision and entry sustaining Cyphers's motion to reactivate the case. The court construed Cyphers's prior motions as a motion to reopen the case and as a notice of dismissal of any remaining claims. Accordingly, the court again entered judgment in favor of Cyphers on the claim for contribution. The court also included a Civ. R. 54(B) notification, indicating that there was no just cause for delay. From this adverse judgment, Balzer appeals.
 II {¶ 16} Balzer's First Assignment of Error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT APPELLEE'S CLAIMS WERE NOT BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS."
 {¶ 18} Under this assignment of error, Balzer contends that the trial court erred in finding that the contribution claim arose under common law equity principles rather than under R.C. 1303.14, which provides for contribution among makers of negotiable instruments. Balzer also contends that the pertinent statute of limitations is found in R.C.1303.16(G)(3), which imposes a three-year statute of limitations on contribution actions.
 {¶ 19} In contrast, Cyphers contends that the common law right to contribution was not superseded when the Uniform Commercial Code was enacted. Cyphers further argues that even if the statute of limitations in R.C. 1303.16 supersedes the common law, the applicable subsection is R.C. 1303.16(A), which provides a six-year limitations period for actions to enforce obligations on notes payable at a definite time. *Page 6 
 {¶ 20} "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." GNFH, Inc. v. W. Am.Ins. Co., 172 Ohio App.3d 127, 133, 2007-Ohio-2722, 873 N.E.2d 345, at] } 16. "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." Smith v. Five RiversMetroParks (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422.
 {¶ 21} In finding that the right of contribution in the present case was equitable, and therefore, subject only to a requirement that it be brought within a reasonable period of time, the trial court relied on our decision in Blumenthal v. Abrams (February 16, 1983), Montgomery App. No. 7797, 1983 WL 4819. Blumenthal involved a wife's claim against her deceased husband's estate for contribution of the husband's pro-rata share of a joint indebtedness to several lending institutions. The trial court held that the wife was entitled to contributions even for items that had not yet been paid. We reversed in part, finding that the estate would be liable for one-half the amounts the wife paid after her husband's death, and for one-half of all payments as they became due and were actually paid. Id. at *6.
 {¶ 22} When we decided Blumenthal, R.C. 2117.31 provided for joint and several liability of an estate where the decedent was indebted on a joint contract or upon a judgment founded on such a contract. In discussing the rule that contribution under R.C. 2117.31 could not be obtained where periodic installment payments on the debt *Page 7 
had not yet accrued, we noted that this was consistent with other Ohio law pertaining to rights of contribution. Id. at *7. In this regard, we observed that:
 {¶ 23} "It is almost universally conceded that the doctrine of contribution is founded, not upon contract, but upon principles of equity and natural justice, which require that those who voluntarily assume a common burden shall bear it in equal proportions and that one party shall not be subject to bear more than his just share, to the advantage of his co-obligors. * * * The right of contribution springs from the desire of equity to enforce equality among persons inaequali jure, and the common law has adopted and given effect to this equitable principle. * * * It is immaterial whether the common liability is joint, several, or joint and several, or whether it is on the same or different instruments. * * *
 {¶ 24} "The equity for contribution arises at the time the parties enter into the relationship which gives rise to the right, but it does not ripen into a cause of action for reimbursement until one party pays more than his just proportion of the debt." Id.
 {¶ 25} The trial court relied on these comments when it found that the contribution right in the present case was equitable and was subject to a reasonable limitations period rather than the three-year statute of limitations in R.C. 3103.16(G). However, the trial court failed to recognize that various aspects of the common law of contribution have been altered by statute. For example, R.C. 2307.25 provides a statutory right of contribution in favor of tortfeasors who have paid more than their proportionate share of liability. A specific statute of limitations for such claims is imposed by R.C. 2307.26, which requires claims for contribution to be brought within one year of a judgment against one or more tortfeasors for the same injury, or within one year of payment if no *Page 8 
judgment has been obtained.
 {¶ 26} Likewise, R.C. 1303.14 and R.C. 1303.16 provide a right of contribution in the context of negotiable instruments and a limitations period for enforcement of the right. In this regard, R.C. 1303.14
provides that:
 {¶ 27} "(A) Except as otherwise provided in the instrument, two or more persons who have the same liability on an instrument as makers, drawers, acceptors, indorsers who indorse as joint payees, or anomalous indorsers are jointly and severally liable in the capacity in which they sign.
 {¶ 28} "(B) Except as provided in division (E) of section 1303.59 of the Revised Code or by agreement of the affected parties, a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law."
 {¶ 29} R.C. 1303.16(A) through (G) also provide statutes of limitation for claims based on various types of negotiable instruments, such as notes payable at a definite time, demand notes, certified checks, and so forth. Both R.C. 1303.14 and R.C. 1303.16 were enacted in 1994, afterBlumenthal, supra, was decided. Consequently, contribution, in the context of negotiable instruments, no longer depends solely upon or is derived solely from equity and natural justice, but is granted and governed by statute.
 {¶ 30} Cyphers argues that the common law right to contribution has not been superseded by the Uniform Commercial Code (UCC). However, we have previously rejected similar arguments. Although R.C. 1301.03 allows the use of common law principles when they are not "displaced" by the UCC, we have held that "the UCC provides the exclusive remedy where the dispute is governed by its statutory provisions. *Page 9 
Common law causes of action may not be raised to circumvent the UCC's rights, claims, and defenses where the statute applies." Olympic TitleIns. Co. v. Fifth Third Bank of Western Ohio, Montgomery App. No. 20145,2004-Ohio-4795, at ] } 31. Accord Dice v. White Family Cos., Montgomery App. Nos. 22057, 22060, 2007-Ohio-5755, at ¶ 29. As a result, the trial court should have consulted the UCC for the applicable statute of limitations.
 {¶ 31} According to Balzer, the correct limitations period is the three-year time frame found in R.C. 1303.16(G)(3). Cyphers claims, however, that even if the UCC applies, the proper subsection is R.C.1303.16(A), which contains a six-year statute of limitations.
 {¶ 32} R.C. 1303.16 states that:
 {¶ 33} "(A) Except as provided in division (E) of this section, an action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.
 {¶ 34} "(B) Except as provided in division (D) or (E) of this section, if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note shall be brought within six years after the date on which the demand for payment is made. If no demand for payment is made to the maker of a note payable on demand, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years.
 {¶ 35} "(C) Except as provided in division (D) of this section, an action to enforce the obligation of a party to an unaccepted draft to pay the draft shall be brought within *Page 10 
three years after dishonor of the draft or ten years after the date of the draft, whichever period expires first.
 {¶ 36} "(D) An action to enforce the obligation of the acceptor of a certified check or the issuer of a teller's check, cashier's check, or traveler's check shall be brought within three years after demand for payment is made to the acceptor or issuer.
 {¶ 37} "(E) An action to enforce the obligation of a party to a certificate of deposit to pay the instrument shall be brought within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.
 {¶ 38} "(F) An action to enforce the obligation of a party to pay an accepted draft, other than a certified check, shall be brought within six years after the due date or dates stated in the draft or acceptance if the obligation of the acceptor is payable at a definite time or within six years after the date of the acceptance if the obligation of the acceptor is payable on demand.
 {¶ 39} "(G) Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues:
 {¶ 40} "(1) An action for conversion of an instrument, an action for money had and received, or a similar action based on conversion;
 {¶ 41} "(2) An action for breach of warranty;
 {¶ 42} "(3) An action to enforce an obligation, duty, or right arising under this chapter and not governed by this section." *Page 11 
 {¶ 43} The case law in Ohio on the UCC is somewhat sparse, and we did not find any cases relevant to the issue before us. We have also not found any relevant discussion in the law of other states or the federal courts. However, after reviewing the statutory language, we agree with Balzer that the three-year statute of limitations in R.C. 1303.16(G)(3) applies.
 {¶ 44} As an initial point, we do not find R.C. 1303.16 to be ambiguous. "`Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted.'" Ohio Dental Hygienists Ass'n v.Ohio State Dental Bd. (1986), 21 Ohio St.3d 21, 23, 487 N.E.2d 301
(citation omitted).
 {¶ 45} By limiting its application to actions "to enforce the obligation of a party to pay a note payable at a definite time," R.C.1303.16(A) plainly refers to holders of notes, not makers or guarantors, as they would not have the right to enforce the note. In this regard, we note that under R.C. 1303.31 (UCC 3-301), persons "entitled to enforce an instrument" include only parties such as holders or non-holders in possession of a note who have the rights of a holder. By definition, "if the instrument is payable to an identified person," the "holder" is the identified person when in possession of the instrument. R.C.1301.01(T)(1). In contrast, a "maker" is "a person who signs or is identified in a note as a person undertaking to pay." R.C.1303.01((A)(7).
 {¶ 46} In the present case, Fifth Third Bank was identified as the holder in the promissory note, and Cyphers was identified as a maker. Cyphers, therefore, would not have been a person entitled to enforce the instrument, and the six-year statute of limitations in R.C. 1303.16(A) would not apply. *Page 12 
 {¶ 47} Furthermore, unlike R.C. 1303.16(A), R.C. 1303.16(G) refers specifically to claims for indemnity or contribution. In this regard, R.C. 1303.16(G) states that:
 {¶ 48} "Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues:
 {¶ 49} "* * *
 {¶ 50} "(3) An action to enforce an obligation, duty, or right arising under this chapter [R.C. Chap. 1303] and not governed by this section [R.C. 1303.16] ." (Bracketed material added).
 {¶ 51} The contribution claim in the present case is not governed by any other law regarding claims for indemnity or contribution, because the UCC provisions relating to negotiable instruments have superseded the pertinent common law for such claims. The contribution action also arose under R.C. Chapter 1303, and specifically, under R.C. 1303.14, which authorizes actions for contribution. Finally, the contribution claim is not governed by R.C. 1303.16, because it does not fit within any of the specifically enumerated statutes of limitation in that section. R.C. 1303.16(G)(3) is a residual subsection covering claims, including claims for contribution, that arise under R.C. Chapter 1303, but do not fit within the other subsections of R.C. 1303.16.
 {¶ 52} Based on the preceding discussion, we conclude that the appropriate statute of limitations is the three-year statute in R.C.1303.16(G)(3). The latest date upon which the cause of action could have accrued is March, 2001, when Cyphers paid the credit line in full. Since the action was not filed within three years of that date, it is barred by the statute of limitations. *Page 13 
 {¶ 53} As a final matter, we note that Cyphers submitted notice of additional authority following oral argument. Cyphers claims, based onParmore Group v. G V Investments, Ltd., Franklin App. Nos. 05AP-756, 06AP-1106, 2006-Ohio-6896, that the present action should be governed by the statute of limitations for written contracts or contracts in writing because the note in question is not a negotiable instrument. We disagree.
 {¶ 54} Parmore simply applies the established principle that "whether a document is a negotiable instrument is determined from the language used on the face of the document." Id. at ? 17. In Parmore, the court concluded that the note in question was a negotiable instrument. The court also rejected the plaintiffs claim that the statute of limitations for written contracts in R.C. 2305.06 should be applied. In particular, the court found that the matter was governed by R.C. Chapter 1303, and that the limitations period in the UCC, rather than a different limitations period, should apply. Id. at] } 23-24. We agree with these conclusions.
 {¶ 55} In a related context, we have stressed that:
 {¶ 56} "Specific statutory provisions prevail over conflicting general provisions unless the legislature's intent that the general provision prevail is clear. R.C. 1.51; State v. Volpe (1988), 38 Ohio St.3d 191,527 N.E.2d 818, paragraph one of the syllabus; Haack v. Bank One,Dayton, N.A. (Apr. 11, 1997), Montgomery App. No. 16131, unreported,1997 WL 205998. Accordingly, if the investors claims can be characterized both as violations of the specific provisions of R.C. Chapter 1707 and as breaches of their contracts with Dean Witter, the limitations period set forth in R.C. 1707.43 prevails over the general limitations period for breach of contract claims." Lynch v. DeanWitter *Page 14 Reynolds, Inc. (1999), 134 Ohio App.3d 668, 671, 731 N.E.2d 1205.
 {¶ 57} Similarly, the Sixth District Court of Appeals concluded inJ A Inc. v. Francis, Huron App. No. H-03-006, 2004-Ohio-1039, that the specific statute of limitations in R.C. 1303.16(B) would apply in a mortgage foreclosure action based on a promissory note, rather than the fifteen-year statute of limitations for written contracts. Id. at at] } 17-18. The Sixth District noted that "In making the choice between two statutes of limitations applicable to the same conduct, it is settled law that: `A special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable.'" Id. at If 17 (citations omitted).
 {¶ 58} Because R.C. 1303.16(G) is a specific statute of limitations, it would control over the more general statutes of limitation for written and unwritten contracts in R.C. 2305.06 and R.C. 2305.07. Furthermore, there were no issues of fact made up in the trial court with regard to whether the note is a negotiable instrument. The complaint refers to the fact that the parties executed a "joint promissory note," as does the motion for summary judgment filed by Cyphers. There is also no indication in the affidavit filed by Cyphers that the note is anything other than a negotiable instrument. Under R.C.1303.03(A), a "negotiable instrument" is defined as:
 {¶ 59} "[A] n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it meets all of the following requirements:
 {¶ 60} "(1) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder. *Page 15 
 {¶ 61} "(2) It is payable on demand or at a definite time.
 {¶ 62} "(3) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain any of the following:
 {¶ 63} "(a) An undertaking or power to give, maintain, or protect collateral to secure payment; "(b) An authorization or power to the holder to confess judgment or realize on or dispose of collateral; "(c) A waiver of the benefit of any law intended for the advantage or protection of an obligor."
 {¶ 64} On its face, the note signed by Cyphers and Balzer states that it is a "promissory note," and that it is payable "to the Order of Fifth Third Bank." The note is payable at a definite time, and does not state any other undertaking or instruction by the persons promising or ordering payment to do any act in addition to the payment of money. Accordingly, the note satisfies the requirements for a negotiable instrument under R.C. 1303.03(A), and the specific statute of limitations in R.C. 1303.16 applies, rather than the more general statutes for written or unwritten contracts. As we have already concluded, the proper subsection within R.C. 1303.16 is (G)(3), which provides a three-year statute of limitations.
 {¶ 65} Balzer's First Assignment of Error is sustained.
 {¶ 66} Balzer's Second Assignment of Error is as follows:
 {¶ 67} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT APPELLEE WAS ENTITLED TO CONTRIBUTION." *Page 16 
 {¶ 68} Under this assignment of error, Balzer contends that the trial court erred in finding that Cyphers is entitled to contribution because the note only required the parties to pay a proportionate share of liability and did not give rise to a right of contribution under R.C.1303.14. In view of our disposition of the First Assignment of Error, the Second Assignment of Error is overruled as moot.
 IV {¶ 69} Balzer's Third Assignment of Error is as follows:
 {¶ 70} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT AN ACCOUNTING WAS NOT A PREREQUISITE TO THE ENTRY OF JUDGMENT."
 {¶ 71} Under this assignment of error, Balzer contends that the trial court should not have granted summary judgment because Cyphers included a claim for an accounting, which was not listed in the complaint as a separate cause of action. According to Balzer, the trial court improperly permitted Cyphers to sever the claim for an accounting and precluded Balzer from presenting evidence that would have offset the amounts owed on the note.
 {¶ 72} Because our ruling on the First Assignment of Error disposes of this case, the Third Assignment of Error is overruled as moot.
 V {¶ 73} Balzer's First Assignment of Error having been sustained, and the Second and Third assignments of error having been overruled as moot, the judgment of the trial *Page 17 
court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. .
WOLFF, P.J., and BROGAN, J., concur.
[1] The record below is not completely clear as to when the balance of the note was paid. One affidavit of Dan Cyphers indicates that the note was paid on April 1, 2000, while a later affidavit from Cyphers states that he made monthly payments from April, 2000, until March, 2001, when the line of credit was paid in full.
[2] Balzer apparently never filed his motion for summary judgment with the trial court, but Cyphers filed a response to the motion. As a result, the trial court stated, in ruling on Cyphers's motion for summary judgment, that it would consider the arguments made in Balzer's motion for summary judgment, even though it had never been filed. *Page 1