OPINION
{¶ 1} Defendant-appellant, Christopher M. Rano ("appellant"), appeals from the judgment of the Franklin County Municipal Court, which, following a jury trial, convicted him of operating a motor vehicle under the influence of alcohol ("OVI"). Because we *Page 2 
reject appellant's argument that the prosecuting attorney committed prosecutorial misconduct during appellant's trial, we affirm the lower court's judgment.
 {¶ 2} Just after midnight on December 23, 2006, appellant was issued a citation and summons for OVI, driving while under suspension, and driving outside marked lanes. Appellant pleaded not guilty and asked for a jury trial. The trial commenced on December 10, 2007. We focus on those aspects of the trial that relate to the question before us.
 {¶ 3} During voir dire, the prosecuting attorney explained that the trial would relate to "a few charges" against appellant — the OVI, OVI with a prior refusal, and "a driving under suspension charge, and that's exactly what it sounds like, driving while your license is under suspension." (Tr. 34.) He specifically asked the jurors about their feelings regarding "a law that says you can't drive when your license is suspended." (Tr. 39.) He also discussed the possible reasons for such a law and situations that might cause a person to drive with a suspended license.
 {¶ 4} During his voir dire, appellant's counsel also discussed driving while under suspension and asked jurors if they knew how licenses get suspended. He and the jurors discussed possible reasons for having a license suspended. In particular, counsel discussed suspension that can result from the Bureau of Motor Vehicles ("BMV") sending a random request to an individual for proof of insurance. If the individual does not respond, the license may be suspended, even without proof that the individual actually received the notice. Counsel stated: "The point is, you can get your license suspended for insurance suspension, you can get your license suspended for *Page 3 
driving reckless. There are other things, administrative things, that can cause your license to be suspended." (Tr. 142.)
 {¶ 5} During his discussion with alternate jurors, the prosecuting attorney referred to appellant's counsel's discussion about license suspensions. The prosecuting attorney stated that the BMV need not prove that an individual received the notice before a license is suspended. Appellant's counsel objected on the grounds that the prosecuting attorney was making legal arguments concerning possible grounds for license suspension. The court overruled the objection. The prosecuting attorney then engaged jurors in a discussion of the possible fairness or unfairness of the suspension process.
 {¶ 6} The prosecuting attorney made an opening statement, at the outset of which he said, "this is an opening statement. This is not evidence. This is a lot like a road map. This is what I think the evidence will show at trial." (Tr. 229.) He described the circumstances of appellant's arrest, noting that a police officer stopped appellant's vehicle, "runs a record check on the defendant, discovers that his driver's license is suspended, takes the defendant into custody." (Tr. 231.)
 {¶ 7} The state's evidence showed that the manager of a McDonald's restaurant called police after observing appellant, whose vehicle was stopped in the drive-through lane. Appellant had slurred speech, drove erratically, and had difficulty getting his money out of his wallet. The manager, a retired Emergency Medical Technician ("EMT"), also detected an odor of alcohol on appellant's breath. *Page 4 
 {¶ 8} Columbus Police Officer Ian Pruitt testified concerning the traffic stop. Pruitt testified that he smelled an odor of alcohol on appellant's breath. When appellant exited the vehicle, he had difficulty standing and understanding instructions, seemed confused, slurred his words, and appeared disheveled. His eyes were glassy and bloodshot. Appellant refused a breath test. When asked whether he had checked the status of appellant's license, Officer Pruitt said that he could not recall whether he had checked it.
 {¶ 9} A clerk of the court testified concerning court and BMV records indicating that appellant had been convicted of OMVI in 2000. BMV records showed that appellant's license was suspended in December 2006 because he refused to take a breathalyzer test for the stop at issue here. BMV records did not show any other suspensions, thus suggesting that he was not driving while under suspension that evening.
 {¶ 10} After the close of the state's evidence, appellant's counsel moved, under Crim. R. 29, for a dismissal of the driving under suspension charge. Counsel argued that the BMV records showed that no suspension existed at the time of appellant's arrest in December 2006. Counsel also moved for a mistrial based on prosecutorial misconduct "because now the prosecution has, throughout voir dire and opening statement, alleged he's under suspension when their own evidence doesn't support it." (Tr. 350.)
 {¶ 11} The prosecuting attorney responded that, until Officer Pruitt testified that he could not recall checking appellant's record, he believed that appellant was under a *Page 5 
suspension. But once Officer Pruitt gave his testimony, the prosecuting attorney was unable to pursue the line of questioning. The prosecuting attorney conceded that, given the testimony by Officer Pruitt and the court clerk, the state could not prove the driving under suspension charge. But he stated: "[W]e at no time proceeded in bad faith. We at no time advanced a charge we did not have probable cause for." (Tr. 352.)
 {¶ 12} The court dismissed the driving under suspension charge and, for reasons not before us, the OVI with a prior refusal charge. The court denied the Crim. R. 29 motion as to the remaining OVI charge and the motion for mistrial. The court thereafter stated to the jury: "Based on some of the things that have happened since we have last seen you, you will no longer be deciding whether or not the defendant is guilty beyond a reasonable doubt on the following charges. The first charge is driving under suspension. * * * You're totally to disregard any references to any fact that might have given reference to such charges. That is your duty." (Tr. 357.)
 {¶ 13} Appellant presented a defense that centered on his claim that he had been mugged the evening he was arrested and that he was disoriented from being beaten, not under the influence of alcohol. A business associate testified that he had been unable to reach appellant by phone for several days around the time of the arrest, that appellant told him of being mugged, and that appellant showed him wounds on his head, elbow, and knee.
 {¶ 14} Appellant testified that, while shopping at Easton Town Center, he was assaulted by two men, beaten, thrown to the ground, and knocked out. He recalled searching for help after it happened and said that he went to McDonald's to look for *Page 6 
police. He did not see anyone who could help him, and he ordered a cheeseburger from the drive-through. He recalled pulling over outside the McDonald's parking lot. When a police officer arrived, appellant told the officer that he had been assaulted and needed help.
 {¶ 15} Appellant identified pictures showing open wounds to his forehead and eye. He said he had received the injuries during the assault and had shown them to Officer Pruitt. He recalled being at the police station and getting a cab to his parents' house. He stayed at his parents' home through Christmas and sought medical attention on December 27. Appellant also testified about the long-term effects from the injuries, including blurred vision, headaches, ringing in the ears, and difficulty sleeping.
 {¶ 16} Appellant also testified that he reported the assault to the police on or about December 28. He identified the police report, which indicated that he told police the assault occurred on December 22 at 11 p.m.
 {¶ 17} A hospital employee testified concerning appellant's medical records from an emergency room visit on December 27. The records indicated a diagnosis of concussion. Appellant's sister also testified concerning his medical condition around the time of his arrest.
 {¶ 18} The state offered Officer Pruitt as a rebuttal witness. Officer Pruitt testified that he spent about three hours with appellant on the night of the arrest. He said that appellant did not tell him that he had been the victim of a crime, and Officer Pruitt had not seen any injuries. *Page 7 
 {¶ 19} Thereafter, the jury found appellant guilty of OVI. Appellant appealed from the judgment of conviction, and he raises a single assignment of error:
 The prosecuting attorney's comments during voir dire and opening statement regarding the status of Appellant's driver's license, which were not supported by the evidence, constituted prosecutorial misconduct and denied Appellant his right to a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 20} In this assignment of error, appellant argues that the prosecuting attorney's statements concerning the suspension of appellant's driver's license constituted prosecutorial misconduct and denied appellant his constitutional rights. We disagree.
 {¶ 21} The test for prosecutorial misconduct is, first, whether the conduct is improper, and second, whether the conduct prejudicially affected the substantial rights of the accused. State v. White,82 Ohio St.3d 16, 22, 1998-Ohio-363. The prosecutor's conduct cannot be grounds for a new trial unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, 405.
 {¶ 22} Even if we were to assume, without deciding, that improper conduct occurred, we conclude that no prejudice resulted. In considering prejudice, we must consider the following factors: (1) the nature of the remarks, (2) whether counsel objected, (3) whether the court gave corrective instructions, and (4) the strength of the evidence against the defendant. State v. Tyler, Franklin App. No. 05AP-989,2006-Ohio-6896, ¶ 20. *Page 8 
 {¶ 23} The prosecuting attorney stated during voir dire that the trial would involve a charge of driving with a suspended license, a statement that reflected the pending charges. Appellant's counsel equally engaged jurors in a discussion of the possible reasons for a license suspension and the possible unfairness of a suspension under certain circumstances, thus giving the jurors a balanced view of the issue. This discussion did not prejudice appellant.
 {¶ 24} Similarly, we also discern no prejudice with respect to the prosecuting attorney's remarks during his opening statement. As the prosecuting attorney stated, an opening statement is not evidence. Rather, it is intended to advise the jury of what counsel expects the evidence to show. State v. Banks, Franklin App. No. 03AP-1286,2005-Ohio-1943, ¶ 9. Further, as the prosecuting attorney later explained, he fully expected the evidence to support the charge of driving with a suspended license. When the evidence did not support the charge, the court dismissed it and told the jury "totally to disregard any references to any fact that might have given reference to such charges." (Tr. 357.) We do not suggest that a prosecuting attorney has no duty to investigate the evidence supporting pending charges. Rather, we conclude on these facts that the prosecutor's conduct did not prejudice appellant, especially in light of the substantial evidence supporting appellant's conviction.
 {¶ 25} While appellant testified that he had been assaulted and that his disorientation resulted from the assault, the state presented persuasive evidence that appellant was under the influence of alcohol. The McDonald's manager (a former EMT) and Officer Pruitt testified that appellant smelled of alcohol, and they testified to *Page 9 
behavior that is consistent with alcohol use. While appellant presented medical records indicating that he was suffering from a concussion, there was no proof that it occurred prior to the traffic stop.
 {¶ 26} Under these circumstances, we conclude that, regardless of whether the prosecuting attorney's statements constituted prosecutorial misconduct, the statements were not prejudicial to appellant. Accordingly, we overrule appellant's assignment of error. Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
BRYANT and GREY, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1