**L & N PARTNERSHIP, Appellee,**

v.

**LAKESIDE FOREST ASSOCIATION, Appellant.**

[Cite as *L & N Partnership v. Lakeside Forest Assn.*, 183 Ohio App.3d 125, 2009-Ohio-2987.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–893.

Decided June 23, 2009.

128

Larry S. Pollak, for appellee.

Manos, Martin, Pergram & Dietz Co., L.P.A., and Dennis L. Pergram, for appellant.

SADLER, Judge.

{¶ 1} Defendant-appellant, Lakeside Forest Association ("appellant" or "the association"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court denied appellant's motion for attorney fees pursuant to R.C. 2323.51, Ohio's Frivolous Conduct statute. Appellant advances two assignments of error for our review, as follows:

First Assignment of Error:

The trial court erred, as a matter of law, in denying Appellant's motion for attorney's fees under R.C. 2323.51[(A)](2)(a)(ii).

Second Assignment of Error:

The trial court erred, as a matter of law, in denying Appellant's motion for attorney's fees under R.C. 2323.51[(A)](2)(a)(iii).

{¶ 2} The following factual and procedural history is taken from the pleadings in the record, including the evidence attached to appellant's motion for summary judgment and the memorandum contra filed by plaintiff-appellee, L & N Partnership ("appellee"), and is undisputed unless otherwise noted.

{¶ 3} This litigation arises out of a dispute over the use of a parcel of land in the Lakeside Forest planned unit development ("the subdivision"), located in Westerville, Ohio. The parcel, known as Reserve D Lot No. 37 ("Lot 37"), is part of an 11.889–acre tract developed in the 1980s by Northeast Co. Northeast Co. was the sole partner in Woodlake Colony, which originally owned the tract.

{¶ 4} By warranty deed ("the deed") recorded on February 5, 1981, Woodlake Colony conveyed the entire 11.889–acre tract, "[w]ith the exception of the dwelling lots, the buildings and other improvements thereon and the easements, rights and appurtenances * * * which are part of the Development[,]" to appellant and its successors and assigns. The deed denominated the land being conveyed to appellant as the "Common Property."

{¶ 5} The deed stated, " 'Common Property' means those portions of the Development, and all improvements thereon and appurtenances thereto, which are owned by the Association and are not set aside or intended for further subdivision into one or several dwelling lots, or are otherwise intended for the mutual benefit, use and enjoyment of the occupants of the Development." The deed further stated that Woodlake Colony contemplated that certain reserves delineated on the recorded plat would be further subdivided without the filing of an amended or supplemental plat, but that such subdivisions would result in not more than a total of 61 separate buildable lots ("dwelling lots") being created. The deed also imposed numerous deed restrictions upon the entire tract.

{¶ 6} The tract was hilly and heavily wooded, and Northeast Co. desired to develop the tract by retaining as many of the existing trees and as much of the other natural vegetation as possible. For this reason, the development plan called for dwelling lots to be as small as possible, i.e., nearly identical to the footprint of each house, with the remainder of the tract retained as commonly owned property. As such, the precise location and dimensions of each dwelling lot were not delineated ahead of time. Instead, the plat contained 23 reserves (each of which was a separate tax parcel), which were then subdivided into dwelling lots. Each home was carefully placed among the trees and vegetation, after which a dwelling lot would be created by deed split; that is, the reserve having already been conveyed to the association, a very small lot, whose boundaries correspond to the exterior dimensions of the home's foundation, would be conveyed back to Woodlake Colony and then, ultimately, to the home's purchaser. In this way, the association operates in a manner functionally equivalent to that of a condominium association.

{¶ 7} Due to this somewhat unique method of subdividing the tract, the Franklin County Auditor agreed to apply the following tax-assessment method until all 61 homes were built. The auditor appraised the improvements on the common property as a whole and then assigned a portion of that total value to each reserve, the size of each reserve's portion corresponding to the number of buildable lots that could potentially be created out of that reserve. By 1987, four unbuilt lots remained, including Lot 37. Because some surrounding homes had been built larger than originally anticipated, these remaining lots could not accommodate comparably sized homes. Additionally, in the case of Lot 37, a fire hydrant had been placed so as to affect development on the lot. Therefore, the association sought to have these four lots removed from the plat and requested that the Franklin County Auditor remove them from the 1988 tax duplicate. The lots were not officially removed until March 8, 1990, after a new plat was submitted and approved.

{¶ 8} While this removal process was pending, Woodlake Colony went out of business and allowed the taxes on the four lots (which were still part of their respective reserves) to become delinquent. Eventually, the lots, including Lot 37, were declared delinquent lands, and the Franklin County Auditor commenced foreclosure proceedings under R.C. Chapter 5721. Appellee purchased Lot 37 at a sheriff's sale on February 4, 1997. Before the deed was delivered, the association indicated that it wished to redeem the lot, but needed more time in order to obtain approval from its membership. For this reason, the court of common pleas issued a five-day stay.

{¶ 9} When the association did not ultimately act to redeem the property by the expiration of the stay, the sheriff delivered to appellee an auditor's deed for

Lot 37 on February 13, 1997. The auditor's deed stated, "Together with all improvements thereon and all exclusive and non-exclusive easements, rights and appurtenances thereto which have been heretofore conveyed to the Grantor or its predecessors in title and which benefit the above-described parcel." Additionally, R.C. 5723.12 provides, "[T]he conveyance of the real estate by the auditor shall extinguish all previous title and invest the purchaser with a new and perfect title that is free from all liens and encumbrances, except * * * any easements and covenants running with the land that were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable * * *."

{¶ 10} Prior to appellee's purchase of Lot 37, Birchwood Lane and Beech Lane, paved roads within the subdivision, had been built and, according to appellee, had been constructed over a portion of Lot 37. Additionally, a home (later owned by defendants, John and Bridget Bhim–Rao, who are not a party to this appeal) had been built; appurtenant to it was a wooden deck that, appellee alleged, reached outside its small lot dimensions and onto Lot 37.

{¶ 11} On December 28, 2004, appellee filed a complaint in the Franklin County Court of Common Pleas against appellant and the Bhim–Raos. Later, appellee dismissed the complaint and then timely refiled it. The complaint contained three causes of action denominated as follows: (1) encroachment, (2) interference with the sale of plaintiff's property, and (3) constructive fraud.[1]

{¶ 12} With respect to the first claim, appellee alleged that Birchwood Lane and Beech Lane, and the Bhim–Raos' deck, had been placed partially on appellee's property. With respect to the second claim, appellee alleged that appellant had interfered with the sale of Lot 37 by removing "for sale" signs that appellee's realtor had placed on it. With respect to the third claim, appellee alleged that appellant had allowed Lot 37 to be forfeited and sold at sheriff's sale without redeeming it, then used improper means (the removal of signs) to keep it from being sold or developed, all in order to retain the benefit of the property without having to pay the taxes on it. Both appellant and the Bhim–Raos filed counterclaims seeking judgments declaring that the deed controls the parties' respective rights and obligations with respect to Lot 37.

{¶ 13} Appellant and the Bhim–Raos filed a motion for summary judgment as to appellee's claims and as to their counterclaims. With respect to the "encroachment" claim, appellant characterized it as a claim for trespass (there being no recognized tort of "encroachment"). Appellant argued that there was no trespass because the deed gives every occupant the "right and easement to use the

---

1. Appellee asserted its encroachment claim against the Bhim–Raos and appellant, while it asserted the remaining two claims against appellant only.

Common Property * * * in accordance with the purposes for which [it is] intended." Lot 37, appellant contended, is part of the Common Property because it is no longer "set aside or intended for further subdivision into one or several dwelling lots." Appellant also argued that the trespass claim was barred by the applicable six-year statute of limitation because the roads and the deck already existed at the time appellee purchased the property, which was more than six years prior to the initial filing of the action.

{¶ 14} With respect to the claim for interference with sale of property, appellant argued that assuming such a tort exists, appellee's claim fails because under the terms of paragraph 11 of the warranty deed, appellee was not permitted to place "for sale" signs on Lot 37. Finally, as to the constructive fraud claim, appellant argued that the claim was time-barred and that appellee had failed to establish the elements of a cause of action for fraud.

{¶ 15} Appellant attached to its motion the affidavit of Joseph Cousins, who identified himself therein as a member of appellant's board of trustees. Cousins averred that appellant's 1987 pursuit of removal of Lot 37 (and three other buildable lots) from the tax duplicate resulted in those lots becoming nonbuildable and tax-exempt and, thus, common property of appellant. According to Cousins, the taxes became delinquent during the removal process. Cousins stated that by the time appellee purchased Lot 37, the lot had already been removed from the tax duplicate, though it had still been forfeited because of previously delinquent taxes. Cousins also averred that the blacktop for Birchwood and Beech Lanes was already in existence at the time of the sale, as was the deck on the Bhim–Rao property.

{¶ 16} Appellant attached to the Cousins affidavit a copy of the deed, which provides, at paragraph 11:

Reserved Easements and Rights of the Developer.

Woodlake Colony hereby reserves, on behalf of itself and Northeast Company, and their respective successors and assigns, the following easements and rights which shall apply and be available during the period of sale of dwelling lots in Lakeside Forest and until either the last such dwelling lot is sold and conveyed to a bona fide purchaser for value or the active sales program is terminated:

(a) the right and easement to maintain reasonable and tasteful signs on the Property indicating lots for sale, identifying models and sales offices and providing other information which the Developer deems necessary or desirable in connection with the sale or other disposition of dwelling lots.

Appellant also attached to the Cousins affidavit copies of various pieces of correspondence detailing appellant's actions with respect to the removal of Lot 37 from the tax duplicate.

{¶ 17} In its memorandum contra, appellee did not dispute that its first claim was a claim for trespass and did not dispute that the applicable statute of limitation was six years. It argued that it was not aware of the "encroachments" onto Lot 37 until it surveyed the property in preparation to list the land for sale. This, appellee maintained, was when its cause of action accrued, so its claim was not time-barred. Appellee also argued that in order for Lot 37 to be subject to the terms of the deed, it had to be reconveyed by Woodlake Colony and, because appellee had purchased the property before such a reconveyance occurred, Lot 37 was not subject to the terms of the deed.

{¶ 18} As to the claim for interference with sale of property, appellee argued that because Lot 37 is not subject to the deed, appellee was not restricted from placing "for sale" signs on the lot. It attached to its memorandum contra the affidavits of Frank R. Nutis and Joy Nutt, both of appellee, who averred that appellant's agent repeatedly removed "for sale" signs from Lot 37 and that appellee's realtors have been unable to sell the property as a result.

{¶ 19} Finally, as to the constructive fraud claim, appellee argued that it does not have to prove that appellant had any intent to defraud appellee because constructive fraud—unlike actual fraud—has no mens rea element. Rather, appellee maintained, the fraud is implied in law and arises from the circumstances of the transaction itself. Additionally, appellee argued that the constructive fraud claim is not time-barred because the cause of action did not accrue until appellee discovered the facts underlying the constructive fraud—that is, the interference with the sale. It was this interference that, appellee alleged, was the improper means by which appellant was receiving the benefit of use of Lot 37 without having paid any value for it.

{¶ 20} Appellee later filed a supplemental memorandum contra, in which it again argued that the restrictions contained in the deed do not apply to Lot 37 because the lot had never been reconveyed to appellant. Appellee relied for this proposition on a letter written to appellant from the assistant administrator of the Real Estate Division for the Franklin County Auditor, a copy of which had been attached to appellant's motion for summary judgment. In the letter, the administrator opined, "For a reserve in your development to become common property the plat of Lakeside Forest requires that the developer (owner), once all the potential building sites have been sold, transfer the remaining reserve land to the homeowners association." Appellee also pointed to the Nutis affidavit attached to its original memorandum contra, in which Mr. Nutis states that "[t]he developer of Lakeside Forest never transferred the remaining reserve land to the homeowner's association as required by the plat for the property to become Common Property."

{¶ 21} Though it had previously appeared to concede that its "encroachment" claim was a claim for trespass, in its supplemental memorandum contra, appellee changed its theory and characterized this claim as one for conversion. It cited the case of *Kramer Consulting, Inc. v. McCarthy* (S.D.Ohio 2003), 284 F.Supp.2d 917, which set forth the elements of conversion as follows: (1) plaintiff's ownership or right to possession of the property at the time of the conversion, (2) defendant's conversion, by a wrongful act or disposition of plaintiff's property rights, and (3) damages. Appellee argued that the wrongful acts that appellant committed included the removal of "for sale" signs from the property. It argued that its damages are to be measured by the value of Lot 37 at the time it was converted because appellee has been unable to sell the lot. Appellee also argued that the conversion claim was not time-barred. It pointed out that the statute of limitation for conversion claims is four years and argued that the discovery rule applies. Because, according to Mr. Nutis' and Ms. Nutt's affidavits, appellee did not discover the conversion until 2003 and 2004, when the "for sale" signs were removed, the action was timely.

{¶ 22} Appellee also changed its theory with respect to its "interference with sale of property" claim, arguing in its supplemental memorandum contra that the claim was, in actuality, a claim for tortious interference with a business relationship. Citing *Bickley v. FMC Technologies, Inc.* (N.D.Ohio 2003), 282 F.Supp.2d 631, appellee set forth the elements of the tort of tortious interference with a business relationship, which are: (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a break or termination of the relationship, and (4) damages resulting therefrom. Appellee argued that the factual basis for this claim consisted in the fact that "Realtor Jill Rudler discontinued her representation of [appellee] because her efforts to sell the property resulted in harassment of agents of [appellant]" and "Realtor John Rosado was unable to sell the property because of interference by agents of [appellant]."

{¶ 23} Therefore, at the completion of summary judgment briefing, by appellee's characterizations, its claims had resolved to the following three claims: (1) a claim for conversion, (2) a claim for tortious interference with a business relationship, and (3) a claim for constructive fraud.[2] On August 22, 2007, the trial court granted appellant's and the Bhim–Raos' motions for summary judgment on their counterclaims. It also granted appellant's motion for summary judgment with respect to appellee's first claim, but analyzed it as a trespass claim instead of

---

2. Appellant claims that appellee's complaint also contained a frivolous Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. However, even though the complaint contains a reference to Ohio criminal RICO statutes, it does not set forth a civil RICO claim, and appellee never pursued a civil RICO claim against appellant.

a conversion claim. The court denied summary judgment as to the tortious-interference claim, finding that genuine issues of fact existed as to when appellant removed the signs and, thus, whether the claim was time-barred. The court also found that there were issues of fact as to whether the deed prohibited use of the signs. Finally, as to the constructive fraud claim, the court denied summary judgment, finding the existence of unspecified issues of material fact. Therefore, the claims that survived summary judgment were appellee's claims for tortious interference with business relations and constructive fraud.

{¶ 24} The jury trial of the case between appellant and appellee began on January 14, 2008, before a visiting judge. The parties submitted proposed jury instructions prior to trial. Consistent with appellee's most recent filing and with the trial court's summary judgment decision, appellant submitted instructions for: (1) tortious interference with contractual or business relations and (2) fraud.

{¶ 25} Appellee, on the other hand, submitted (1) instructions denominated as "Tortuous [sic] Interference With the Sale of the Property," but that were actually the elements of conversion, taken directly from the federal district court case that appellee had cited in its supplemental memorandum contra to appellant's motion for summary judgment, and (2) instructions denominated as "constructive fraud" but that were, without citation of authority therefor, comprised of "Wrongdoing by [appellant] that is particularly gross and egregious; * * * knowledge of the harm that might be caused * * * or actual malice; Damages."

{¶ 26} The transcript of the jury trial does not reflect any pretrial discussion about jury instructions or about the nature of the specific causes of action being tried. Appellee began by making its opening statement. Therein, appellee mentioned no specific cause of action by name. Appellee's opening statement was, in toto, as follows:

> May it please the Court, members of the jury, opposing counsel Pergram, Mr. Cousins: This is a case about a partnership that bought a parcel of land at a county auditor's sale because it was forfeited for nonpayment of taxes.

> The evidence will show that defendant, Lakeside Forest Association, could have redeemed this property for a few hundred dollars but failed or refused to do so.

> The evidence will show that defendant, Lakeside Forest Association, filed a motion asking for more time saying it intended to redeem the property but then failed or refused to do so, even after a Franklin County Common Pleas Judge gave them more time.

> Almost two years later, the evidence will show, after Lakeside Forest Association reneged on its stated intention to pay its taxes, the auditor's sale was finally held.

Now, no one bid on the property at two sheriff sales. And Lakeside Forest Association gambled that no one would bid at the auditor's sale. But the evidence will show my client did. My client did bid and was given a deed by the county auditor at the auditor's sale.

The parcel remains undeveloped as green space in the community. After a few years, market conditions were good in the real estate market and L & N Partnership decided to sell the parcel.

The evidence will show that the leaders of Lakeside Forest Association admitted to L & N Partnership's administrative assistant, Joy Nutt, and to their real estate agent, Mr. Rosato, that Lakeside Forest Association interfered with the sale of L & N Partnership's property damaging L & N Partnership thereby.

The evidence will show a pattern of such activity by the board of the Association that we are going to argue to you amounted to constructive fraud.

I will not be able to account for the hostility and malice of the defendant, Lakeside Forest Association, or why they sought to damage my client, L & N Partnership. But that's why we have court's [sic] of law to provide recourse for civil wrongs and compensation for those who are damaged.

You are the triers of the facts and we're going to ask you to find that the claims that L & N Partnership have brought in this lawsuit are valid and should be upheld, that my client should be made whole.

And if you find that the elements add up to a claim for compensatory damages that also qualifies for the awarding of punitive damages, we're going to ask that you give those punitive damages.

Our position is that the evidence will show that Lakeside Forest Association knew exactly what they were doing. They tried to exercise control without any right to do so. They treated L & N Partnership property as if it were common area while L & N Partnership paid the taxes, paid the insurance.

They admitted, and the evidence will show this, they admitted that they took for sale signs off L & N Partnership property and told L & N's administrative assistant that they wouldn't allow the property to be sold. This is unacceptable.

After you hear all of the evidence, I will ask you to do your duty under your sworn oath, to make L & N whole by awarding compensatory as well as punitive damages.

Thank you very much.

{¶ 27} Immediately following appellee's opening statement, appellant orally moved the court for a directed verdict, pursuant to Civ.R. 50(A)(1), arguing that, assuming the truth of each and every fact contained in appellee's opening

statement, it could not prevail on tortious interference with business relations or constructive fraud.   Appellant argued:

The first element of * * * tortious interference * * * requires the plaintiff to prove a contract or a business relationship.   There was absolutely no mention by plaintiff in its opening statement of a contract or business relationship.   All plaintiff's counsel said was that there was an interference with the sale.   Doesn't say at [sic] that a realtor had a contract.   We don't know if there was a contract with a realtor or that there was a business relationship.   So that element was not even commented on [in the opening statement].

Knowledge by Lakeside Forest, the second element of tortious interference * * *.   Well, since no contract or business relationship was mentioned there obviously was no mention of Lakeside Forest having knowledge of the same.   The next item, contract breach or business relationship terminated.   * * *   We've not heard any allegation that a contract was breached by someone with L & N nor had we heard about the business relationship terminated by someone who had a business relationship with L & N.

We also haven't heard that Lakeside Forest caused any such breach or business relationship termination, which is the fourth element.

Lack of justification and damage caused by the unlawful act.   Really been no damage even mentioned.

* * *

The second claim remaining is that of constructive fraud.   * * * [N]ow this isn't just good old fashioned fraud, this is constructive fraud, a very special type of fraud and the elements to this are very special.

The first element is a fiduciary relationship or relation of trust.   Absolutely no mention of that in the opening statement.

The second element is a concealment of a material fact.   Once again, absolutely no mention that Lakeside Forest concealed anything from anybody.

* * *

The fourth element, L & N's justifiable reliance.   Once again, absolutely no mention that L & N justifiably relied on a concealment of a material fact.

{¶ 28} Appellee responded, and the trial court took the matter under advisement overnight.   The next morning, the trial court asked appellee's counsel if he had anything to add regarding the motion for directed verdict, and counsel replied in the negative.   Thereafter, the trial court granted the motion and discharged the jury.

{¶ 29} Later, appellant timely filed a motion seeking attorney fees pursuant to R.C. 2323.51 and requested a bifurcated hearing, with the first hearing addressed solely to whether appellee and/or its attorney had engaged in frivolous conduct.

A party may seek an award of attorney fees pursuant to R.C. 2323.51(B), which provides, "[A]t any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." R.C. 2323.51(B)(1). "An award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4).

{¶ 30} In its motion, appellant argued that appellee and its attorney had asserted claims that were "not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law" pursuant to R.C. 2323.51(A)(2)(a)(ii), and/or consisted "of allegations or other factual contentions that have no evidentiary support" pursuant to R.C. 2323.51(A)(2)(a)(iii). The motion related to appellee's claim for "encroachment" that was dismissed on summary judgment and to its claims for tortious interference and constructive fraud, upon which the trial court directed a verdict.

{¶ 31} On April 8, 2008, the trial court held a hearing on the issue whether L & N and/or its attorney had engaged in frivolous conduct. The parties once again disagreed as to the precise nature of the claims that went to trial. Appellant argued that the only recognized claims that appellee could possibly have pursued at trial were tortious interference with contractual or business relations and constructive fraud. Contrarily, appellee argued that it had never alleged, in any of its papers or pleadings, the existence of a business relationship or contract and that it never advanced a claim for tortious interference with contractual or business relations. Rather, it maintained that it was pursuing a claim for "interference with the sale of the property." It did not cite a case or statute recognizing such a tort; rather, it argued, "the law of torts is concerned with the duty to respect the property of others and cause of action and tort may be predicated upon an unlawful interference with the enjoyment of his or her property. That's from Am.Jur.2nd, Tort Section 32. But we don't have to go for a hornbook definition here. It is a civil wrong for which the law provides a remedy. If we don't have that, it is a frivolous litigation."

{¶ 32} The parties also disagreed as to whether the trial court's prior decisions in the case militated for or against granting appellant's motion with respect to two of appellee's three claims. Appellant argued that because appellee's opening statement, the purpose of which is to tell the jury what a party intends to show, contained no reference to several elements of its causes of action, and in light of the fact that the trial court granted a directed verdict as a result, it was obvious that appellee's pursuit of its claims was frivolous. On the other hand, appellee

argued that the directed verdict is not, ipso facto, determinative of the question whether appellee had evidence to support its claims. Appellee urged the court to remember that it had denied summary judgment on these claims and contended that survival through summary judgment proceedings demonstrates that its claims were not frivolous.

{¶ 33} By entry journalized on September 11, 2008, the court denied appellant's motion. In its entry, the trial court found that the claims that had survived summary judgment were (1) tortious interference with contract or business relations and (2) constructive fraud. With respect to the first claim, the court went on to explain:

Plaintiff's opening statement complained of the resistance to the placing of the sign, but did not assert any right to do so, nor did it attribute any resultant damages or loss of contract due to this lack of permission to put up a sign on the lot.

Looking at the elements of this tort, there was no contract. Any contract was inchoate at best. It was certainly not breached or terminated. And there was no allegation that defendants' acts were done with malice or with a lack of justification.

{¶ 34} With respect to the second claim, the court stated:

[T]he court is of the opinion here that the plaintiff has confused fraud with constructive fraud. Constructive fraud requires some kind of fiduciary or trust relationship.

* * *

[T]here assuredly can be no such relation here where the parties were not alleged to have been anything other than strangers. The plaintiff bought exactly just what he paid $700 for, a small tract of reserve property in a subdivision, one that could not be built upon at that time. There was no allegation that defendant misled, nor that plaintiff relied, when bidding on the property at the sheriff's auction.

The court is of the opinion that the plaintiff could not make its case to a court or jury if its case stood as given in the opening statement. The elements of fraud were in large part omitted and no contract nor specific breach nor resultant damages were stated with any specificity.

* * *

[R]ecovery of damages appears tenuous and any causal connection between acts of defendants and damages to plaintiffs is remote * * *.

{¶ 35} Despite these findings, however, the trial court declined to find frivolous conduct, stating, "The court is also of the opinion that the purpose of R.C. 2323.51 is to impose upon the legal profession a measure of good faith in asserting claims

and defenses in the pleadings. * * * However, omissions made during the heat of trial resulting in the sanctions in this case are not the things intended to be regulated by this statute."

{¶ 36} Having reviewed in detail the procedural history as it relates to the claims subject of the instant dispute, and observed the evolution of appellee's claims throughout the pendency of this litigation, we now turn to appellant's assignments of error, which we will discuss together because they both involve all three claims that appellee asserted during the litigation.

{¶ 37} In its first assignment of error, appellant argues that the trial court erred when it refused to find that appellee had engaged in frivolous conduct in asserting claims that were not warranted under existing law, cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good-faith argument for the establishment of new law. Whether a claim is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, and an appellate court is not bound by the trial court's determination. *Tomb & Assocs., Inc. v. Wagner* (1992), 82 Ohio App.3d 363, 612 N.E.2d 468; *Patton v. Ditmyer,* 4th Dist. No. 05CA12, 2006-Ohio-7107, 2006 WL 3896780, ¶ 81. "[T]he test is whether no reasonable lawyer would have brought the action in light of the existing law." *Stafford v. Columbus Bonding Ctr.,* 177 Ohio App.3d 799, 2008-Ohio-3948, 896 N.E.2d 191, ¶ 6.

{¶ 38} In its second assignment of error, appellant argues that the trial court erred in refusing to find that appellee had engaged in frivolous conduct in pursuing claims that had no evidentiary support. Ordinarily, whether a party's pursuit of claims lacked evidentiary support involves mixed questions of law and fact. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 51, 673 N.E.2d 628. In this case, however, the only evidence in the record regarding any of appellee's claims is that adduced during the summary judgment motion practice. As to the interference and fraud claims, no additional evidence was presented at trial. "[A]n opening statement is not evidence. Rather, it is intended to advise the jury of what counsel expects the evidence to show." *Columbus v. Rano,* 10th Dist. No. 08AP–30, 2009-Ohio-578, 2009 WL 311434, ¶ 24. Moreover, the trial court did not take evidence at the hearing on the frivolous conduct motion; it only heard arguments from counsel. What aids our inquiry, however, is that the evidence presented during the summary judgment motion practice is and always has been undisputed—the parties' dispute has always focused upon whether the evidence of record demonstrates the existence of any actionable claim, and if so, what type of claim.

{¶ 39} We begin with appellee's "encroachment" claim. Appellant argues that appellee's pursuit of this claim was not warranted under existing law and was unsupported by evidence because "[a] reasonable attorney would know that when L & N purchased the property at the Auditor's sale, for $700, it was taking the property with all of its benefits, as well as all of its burdens." Appellant points out that appellee's auditor's deed plainly states that appellee took the property subject to all pre-existing easements, rights, and appurtenances and that the deed conveying all of the 11.889–acre tract to appellant would have been plainly apparent upon a thorough title search. Appellant also directs our attention to the fact that appellee's counsel acknowledged that any appeal from the trial court's grant of summary judgment on this claim would have been frivolous, a tacit acknowledgment, according to appellant, that the claim was frivolous from the beginning.

{¶ 40} In response, appellee argues that there are two reasons that its "encroachment" claim was not frivolous: (1) because it "did not become aware of the significant encroachments on its property until it prepared to put the property up for sale" and (2) because "it purchased the property subject only to the Auditor's deed, and * * * not subject to the Warranty Deed relied on by Lakeside."

{¶ 41} "[T]he proper recording of those instruments referenced in R.C. 5301.25(A) serves as 'constructive' notice of that interest or encumbrance to all who claim through or under the grantor by whom such deed was executed. Such notice, in this statutory sense, is 'constructive' because the subsequent purchaser is deemed to have notice of the record whether he reviewed it or not." (Emphasis omitted.) *Thames v. Asia's Janitorial Serv., Inc.* (1992), 81 Ohio App.3d 579, 587, 611 N.E.2d 948; see also *Morris v. Daniels* (1880), 35 Ohio St. 406, 416; *Blake v. Graham* (1856), 6 Ohio St. 580, 583–584.

{¶ 42} Moreover, R.C. 5723.12(B) clearly provides that "the conveyance of the real estate by the auditor shall extinguish all previous title and invest the purchaser with a new and perfect title that is free from all liens and encumbrances, except * * * any easements and covenants running with the land that were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable * * *." Thus, where the chain of title contains easements and covenants running with the land that were created prior to the time the property became forfeited land, the purchaser who acquires the land by auditor's deed is on constructive notice of such burdens, and takes subject thereto.

{¶ 43} Here, the 1981 warranty deed, by which Woodlake Colony conveyed the entire 11.889–acre tract to appellant, was undisputedly in the chain of title. That

deed defined as "common property" belonging to appellant any portions of Lakeside Forest "not set aside or intended for further subdivision into one or several dwelling lots." Prior to appellee's purchase of it, Lot 37 had been removed as a planned dwelling lot by amended plat and had been thus removed from the tax duplicate. Being no longer "set aside or intended for further subdivision into one or several dwelling lots," Lot 37 was already "common property" that had been conveyed to appellant and permitted to be used "for the mutual benefit, use and enjoyment of the occupants of the Development." All of this information was within appellee's constructive knowledge prior to the time of sale. Its receipt of the auditor's deed at the judicial sale did not alter that reality. On these undisputed facts, appellant's pursuit of an "encroachment" claim—whether treated as one for trespass or conversion, was not warranted by existing law and had no evidentiary support. As a matter of law, pursuit of this claim amounted to frivolous conduct within the meaning of R.C. 2323.51(A)(2)(a).

{¶ 44} Next, we analyze appellant's assignments of error relating to appellee's claim for "interference with sale of property." Appellant argues that appellee's pursuit of this claim was frivolous for two reasons. First, there is no recognized tort of "interference with sale of property." Second, even after the trial court liberally construed this claim as being the recognized tort of "tortious interference with contract or business relationship," appellee had no evidence of two essential elements of that tort, to wit: the existence of a contract or a business relationship, and damage thereto.

{¶ 45} In response, appellee argues that its pursuit of this claim was not frivolous. However, its brief contains no citation of authority for the proposition that "interference with sale of property" is a recognized tort, and we are not aware of any such authority. Removal of "for sale" signs could be construed as a trespass, conversion, or (coupled with additional factual allegations) interference with contractual or business relations, but appellee does not argue that it was pursuing any of those torts. In fact, appellee vehemently insists that it was never pursuing a claim for tortious interference with contractual or business relations because "[t]here was no contract or business relationship." Appellee does not argue that it ever made an argument for the establishment of new law; rather, it argues that it was pursuing a valid cause of action, and the trial court unexpectedly chose to characterize its claim as a different valid cause of action. Appellee's argument resolves, then, to the notion that it was pursuing a claim for "interference with sale of property," but it should not be charged with having engaged in frivolous conduct because it did not know until the trial court granted a directed verdict that the trial court had "accepted [appellant's] transformation of the Interference with Sale claim to a Tortuous [sic] Interference with Contract or Business Relationship claim."

{¶ 46} However, that argument ignores the fact that "interference with sale of property" is not a recognized tort in Ohio. Whether a claim is or is not warranted under existing law—that is, in this case, whether it is a recognized tort—is not dependent upon how a trial judge rules with respect to a motion for directed verdict; a tort either is, or is not, recognized. In this case, appellee pursued a claim that does not exist and failed or refused to adduce facts sufficient to make even a prima facie case for any tort that is recognized. Accordingly, pursuit of the claim for "interference with sale of property" was frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) and (iii).

{¶ 47} Finally, we analyze appellant's assignments of error relating to appellee's claim for constructive fraud. Appellant argues that one of the elements of a constructive fraud claim is the existence of a fiduciary duty or relationship of trust between appellant and appellee. Here, because the parties were strangers to one another, appellee could never have proven that such a relationship or duty existed. Therefore, appellant argues, pursuit of this claim was frivolous. Appellant maintains that this was not simply a matter of appellee's counsel inadvertently omitting to mention this element in his opening statement. Rather, appellant points out that while appellee's counsel and the trial court discussed the motion for directed verdict, appellee's counsel made it clear that appellee had never intended to present evidence of such a relationship because appellee's counsel did not believe that this was an essential element of a claim for constructive fraud.

{¶ 48} Appellee argues that it did indeed believe, and still maintains, that the existence of a special trust or fiduciary relationship is not an element of the tort of constructive fraud. Thus, it argues, "with no guidance available from Ohio Jury Instructions, the Constructive Fraud Claim would rise or fall based on which proposed instructions the Court accepted." For this reason, appellee argues, its pursuit of this claim was not unwarranted by existing law, nor was it unsupported by sufficient facts.

{¶ 49} "Constructive fraud is defined as 'a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.'" *Cohen v. Estate of Cohen* (1986), 23 Ohio St.3d 90, 91, 23 OBR 218, 491 N.E.2d 698, quoting *Stanley v. Sewell Coal Co.* (1981), 169 W.Va. 72, 285 S.E.2d 679, 683; *In re Guardianship of Guzay,* 10th Dist. No. 02AP–745, 2003-Ohio-5036, 2003 WL 22177106, ¶ 21. "Constructive fraud requires a confidential relationship. The law relating to constructive fraud assumes fraud to protect significant social interests when parties have a special fiduciary or confidential relationship which places one party in a position to take an unfair advantage over another." *Woodworth v. Hunting-*

*ton Natl. Bank* (Dec. 7, 1995), 10th Dist. No. 95APE02–219, 1995 WL 723664, *4, citing *Perlberg v. Perlberg* (1969), 18 Ohio St.2d 55, 47 O.O.2d 167, 247 N.E.2d 306.

{¶ 50} The foregoing authorities, all of which predate the filing of appellee's original complaint, establish that an essential element of a cause of action for constructive fraud is the existence of a public or private confidence, the violation of which breaches a legal or equitable duty, or, put another way, a special fiduciary or a confidential relationship that places one party in a position to take an unfair advantage over another. Appellee admits that it never had any evidence of this element and never intended to present any such evidence. Indeed, contrary to the above authorities, it did not believe that this was required in order to establish a prima facie case for constructive fraud. On this record, pursuit of appellee's claim for constructive fraud was frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) and (iii).

{¶ 51} For all of the foregoing reasons, appellant's first and second assignments of error are sustained. Sanctions for frivolous conduct may be imposed upon either a party or his attorney or both. R.C. 2323.51(A)(2)(a). "[S]anctions may be imposed both jointly and severally upon both plaintiff and counsel, if the conduct so warrants." *Sain v. Roo* (Oct. 23, 2001), 10th Dist. No. 01AP–360, 2001 WL 1263665, *8. "[S]anctions should be imposed upon the person who is actually responsible for the frivolous conduct." *Blackburn v. Lauder* (Nov. 12, 1996), 4th Dist. No. 96CA5, 1996 WL 666658, *6. "Where a * * * court has found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court." *Sain* at *3, citing *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 52, 673 N.E.2d 628. Accordingly, it is not within this court's province to decide, in the first instance, whether sanctions should be imposed. Therefore, this cause will be remanded for the trial court to engage in that inquiry.

{¶ 52} In summary, appellant's first and second assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.

Judgment reversed<br>cause remanded.

McGRATH and TYACK, JJ., concur.