NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0025n.06

Case No. 18-3487

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSHUA D. ROSS, | ) | **FILED** |
| | ) | Jan 16, 2019 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| PENNYMAC LOAN SERVICES LLC, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

BEFORE: SILER, COOK, and BUSH, Circuit Judges;

**JOHN K. BUSH, Circuit Judge.** Joshua Ross claims that after purchasing a house in

Amelia, Ohio, he discovered it was contaminated with mold. But to hold the seller, PennyMac

Loan Services, LLC ("PennyMac"), liable in federal court, Ross needed first to plead a cause of

action that complied with the Federal Rules of Civil Procedure. He did not do so.

Ross sued PennyMac in state court for various common law claims and state statutory

violations, seeking relief that included punitive damages. After PennyMac removed the case to

federal court, the district court granted judgment on the pleadings in PennyMac's favor. The

district court held that Ross had failed to state a cause of action, and to plead fraud with

particularity, according to the federal pleading requirements. Ross never sought leave to amend

the complaint. Instead, he stood on his pleadings and appealed to this court. Because the district

court did not err in granting judgment to PennyMac, based on federal pleading standards, we **AFFIRM**.

## I. Facts and Procedural Posture

In November 2014, Ross purchased the home at issue from PennyMac. As indicated in the purchase contract between Ross and PennyMac, PennyMac had acquired the house via foreclosure, and therefore disclaimed knowledge of the condition of the house. The purchase contract further stipulated that Ross was buying the home "as is" and excused PennyMac from liability for any deficiencies in the condition of the house, including mold. R. 7-1 Page ID 65. As required by the contract, Ross arranged for an independent home inspection prior to the purchase. Although the home inspection discovered numerous problems with the home, it did not report any discovery of mold, and Ross was generally satisfied with the condition of the home. Not until after the execution of the contract did Ross discover the alleged mold problem.

Ross sued PennyMac in Ohio state court, asserting fraud, breach of contract, negligence, violation of mandatory disclosure requirements under an Ohio statute, and "intentional, willful, wanton, deceitful, malicious, reckless and/or grossly negligent conduct" justifying "punitive damages and/or attorney fee compensation." R. 4, Page ID 30–31. PennyMac removed the case to federal court and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). At no point after removal did Ross move to amend his complaint. The district court granted judgment on the pleadings in favor of PennyMac as to all of Ross's claims. This timely appeal followed.

Ross asserts that the district court erred by entering judgment against him on the common law claims. Ross did not appeal the judgment on the Ohio disclosure requirements. This statutory issue is therefore forfeited, *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)

(citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n. 18 (6th Cir. 1999) (en banc)), and we will consider only the claims of fraud, breach of contract and negligence, and the issue of punitive damages.

## II. Standard of Review

We review de novo the district court's decision to grant judgment on the pleadings. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standard as that for a Rule 12(b)(6) motion: "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). We "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). This does not mean, however, that all summary assertions in a complaint are simply accepted at face value. For a complaint to survive a Rule 12(c) motion, the pleadings "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. Discussion

"Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Here, the applicable forum state is Ohio, so we will apply Ohio substantive law.

As previously mentioned, Ross seeks relief for fraud, breach of contract, and negligence, and asks for punitive damages. We will review each of these matters in turn.

## A. Fraud

In his complaint, Ross accused PennyMac of "the tort of fraud in the inducement and/or the tort of constructive fraud." R. 4 Page ID 28. In Ohio, the elements of fraud are:

> (a) a representation, or, where there is a duty to disclose, a concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of Cty. Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986) (quoting *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984)).

The problem for Ross's fraud pleading is Federal Rule of Civil Procedure 9(b), which directs a party who is alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires a plaintiff (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citing *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009)).

We first examine Ross's allegation of "fraud in the inducement." It is apparent from Ross's complaint that he did not meet the heightened pleading requirements for fraud. To demonstrate this, we will quote at length from the complaint:

> 5. Plaintiff had performed a comprehensive property inspection that revealed multiple issues with the Property, all of which Plaintiff was aware in negotiating the bargained-for price to be paid for the Property.
>
> 6. Unknown to Plaintiff was that the Property was constructed in a manner to specifically conceal mold damage that was known to Defendants.

. . .

8. Defendant had personal knowledge that Plaintiff believed and expected that he was purchasing the Property as constituted at the time of the agreement to purchase.

9. Defendant knowingly and falsely represented and/or specifically withheld information regarding damage that they knew of, and knew to be undiscoverable upon reasonable inspection.

10. Defendant had knowledge that such representations and/or concealments were false and were made with the intent to induce Plaintiff to purchase the Property for the price at which was agreed for the Property.

11. Plaintiff reasonably and justifiably relied on Defendant's representations that the Property was as constituted upon reasonable inspection.

12. As a direct and proximate result of Defendant's fraudulent actions, Plaintiff has suffered harm and financial loss, and Defendant's actions constitute the tort of fraud in the inducement and/or the tort of constructive fraud.

13. Defendant's actions were taken with malice, ill will and/or reckless indifference toward Plaintiff, and therefore, Plaintiff is entitled to actual, compensatory and punitive damages, in an amount to be determined, for the injuries sustained as the result of this transaction.

R. 4 Page ID 28–29.

On appeal, Ross argues that his statement in ¶ 9 of the complaint that PennyMac "knowingly and falsely represented and/or specifically withheld information regarding damage" is sufficient to meet the pleading requirements. Appellant Br. at 9. Additionally, Ross asserts that "PennyMac withheld that it had obtained an estimate from Home Depot Renovation Services for mold remediation prior to selling the home to Ross." *Id.* But this assertion appears nowhere in the complaint. A court considering a motion for judgment on the pleadings considers the pleadings and the exhibits attached thereto. Fed. R. Civ. P. 12(d); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." (citing Fed. R. Civ. P. 10(c))). Inexplicably, Ross's counsel did not seek to amend his pleadings to make any allegation regarding the Home Depot estimate, even in the face of PennyMac's 12(c) motion, and despite the fact that at the time PennyMac moved for judgment on the pleadings, the time to move to amend the

pleadings under the district court's scheduling order had not yet elapsed. No matter what evidence Ross might have—even evidence that was on the record before the district court—it would be inappropriate for the district court (or for this court) to consider evidence outside of the pleadings for the purposes of a Rule 12(c) motion. In these circumstances, we can only consider the complaint itself.

An allegation of fraud requires heightened pleading because it naturally presents "a high risk of abusive litigation." *Republic Bank*, 683 F.3d at 247 (citing *Twombly*, 550 U.S. at 569 n. 14). The pleadings must be sufficient to "provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Without Ross's extrinsic evidence, we are left with the conclusory statement that PennyMac "knowingly and falsely represented and/or specifically withheld information." R. 4 Page ID 28. Essentially, Ross pleads that PennyMac committed fraud by asserting that PennyMac committed fraud. Even drawing all reasonable inferences in Ross's favor, it is difficult to see how PennyMac was put on fair notice of the facts Rule 9(b) requires to be included in the complaint—facts such as: the nature of the allegedly fraudulent statements, how PennyMac had knowledge of the alleged falsity, who made the allegedly fraudulent statements on PennyMac's behalf, where the allegedly fraudulent statements were made, or when the allegedly fraudulent statements were made. This failure to put PennyMac on notice is fatal to Ross's fraud claim.

In addition to accusing PennyMac of fraud, Ross also accused PennyMac of constructive fraud. Constructive fraud in Ohio is "a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Cohen v. Estate of*

*Cohen*, 491 N.E.2d 698, 699–700 (Ohio 1986) (quoting *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 683 (W. Va. 1981)). Constructive fraud in Ohio does not require scienter, but it does require "a special fiduciary or confidential relationship which places one party in a position to take an unfair advantage over another." *L & N P'ship v. Lakeside Forest Ass'n*, 916 N.E.2d 500, 514 (Ohio Ct. App. 2009). Nowhere in Ross's complaint does he plead a fiduciary or confidential relationship with PennyMac. Rather, the complaint indicates that Ross and PennyMac negotiated an arms-length contract. Therefore, the constructive fraud allegation must also fail.

## B. Breach of Contract

Ross's second count is for breach of contract. To prove this claim, Ross must show the following elements: 1) a contract existed; 2) Ross fulfilled his obligations; 3) PennyMac failed to fulfill its obligations; and 4) damages resulted from that failure. *Quest Workforce Sols., LLC v. Job1USA, Inc.*, 75 N.E.3d 1020, 1030 (Ohio Ct. App. 2016). To demonstrate the conclusory nature of Ross's pleadings, we will quote the entirety of the second count of Ross's complaint:

> COUNT TWO
>
> 14. Plaintiff refers to and incorporates the preceding allegations as if fully rewritten herein.
>
> 15. Defendant breached the contract to purchase between Defendant and Plaintiff, Joshua Ross.
>
> 16. As a direct and proximate result, Plaintiff, Joshua Ross, has suffered harm and financial loss.

R. 4 Page ID 29. Once again, Ross's pleading is entirely conclusory; he is essentially saying that PennyMac breached the contract by breaching the contract.

Ross argues in his appellate brief that Ohio law requires the seller of a home to disclose latent defects to the seller. He further asserts that the home he purchased was infested with mold, that PennyMac was aware of this defect, and in fact took steps to hide the mold problem. He argues that notwithstanding the "as is" provision in the home sale contract, PennyMac is in breach

because Ohio law does not allow an "as is" provision to immunize a home seller who has taken positive steps to hide a defect.

The problem for Ross, once again, is that these asserted facts underlying his appellate argument (which is similar to the argument he made in the district court) are inappropriate to consider on a Rule 12(c) motion unless they were actually alleged in the complaint. These new facts are allegedly derived from exhibits that are not part of the complaint. As PennyMac rightly points out, the district court could only consider the pleadings, not additional exhibits later added to the record. Therefore, the district court was correct to grant judgment to PennyMac as to this count.

### C. Negligence

Ross also alleges that PennyMac is liable in negligence. For this claim, the economic loss doctrine prevents Ross's recovery. In Ohio, the economic loss doctrine has two aspects. First, it bars a plaintiff from recovering in negligence for purely economic damages. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). Second, it prevents a plaintiff from recovering in tort for the conduct of a defendant that violates only a contractual duty rather than any free-standing duty of care. *Id.* ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation . . . remains the particular province of the law of contracts." (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 211 (Ohio 1990))).

The second aspect of the economic loss doctrine is fatal to Ross's negligence claim. Ohio maintains the traditional elements for negligence: duty, breach, causation, and harm. *Stefansky v. Cantina Laredo Columbus/Nashville, L.P.*, 72 N.E.3d 97, 103 (Ohio Ct. App. 2016) (citing *Strother v. Hutchinson*, 423 N.E.2d 467 (Ohio 1981)). Ross argues that PennyMac "owed a duty

8

of care to Ross, as a purchaser of a residential property, under Ohio law to honestly and in good faith disclose known material defects . . . ." Appellant Br. at 13. However, this was not a free-standing duty; rather, it arose incident to the contractual relationship between Ross and PennyMac. Because Ross's loss resulted from "a breach of duties assumed only by agreement," *Corporex*, 835 N.E.2d at 704, the economic loss doctrine applies.

Ross argues correctly that Ohio law makes an exception to the economic loss doctrine in cases where the defendant has committed an intentional tort. *See Eysoldt v. ProScan Imaging*, 957 N.E.2d 780, 785 (Ohio Ct. App. 2011). However, the exception—for intentional torts—does not apply to Ross's allegation of negligence. In fact, the alleged negligence appears to be exactly the kind of cause of action that Ohio law bars via the economic loss doctrine. *See, e.g., id.* at 784–85 ("The economic-loss doctrine generally prevents recovery of damages in tort for purely economic loss. The Eysoldts argue that it applies only in negligence cases, not in cases involving intentional torts. We agree."). Ross makes no argument as to why his negligence claim falls into the intentional torts exception, nor why we should interpret Ohio law as to allow his negligence claim in this case. Therefore, the negligence claim must also fail.

## D. Punitive Damages

Finally, Ross alleges that PennyMac's conduct warrants punitive damages. In Ohio, punitive damages are a remedy rather than a cause of action. *Whetstone v. Binner*, 57 N.E.3d 1111, 1115 (Ohio 2016) ("Punitive damages are not an independent cause of action; rather, they arise incident to compensable harm."). Ross argues that PennyMac's conduct was "aggravated and/or egregious," Appellant Br. at 13, and that therefore punitive damages are appropriate. However, because none of Ross's causes of action survive, his request for punitive damages also cannot survive.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.